**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

MICHELLE B.,

       *Plaintiff,*

v.

COMMISSIONER OF SOCIAL
SECURITY,

       *Defendant.*

_____/

Case No. 1:25-cv-13482

Patricia T. Morris
United States Magistrate Judge

**MEMORANDUM OPINION AND ORDER ON**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 9, 10)**

**I.**    **CONCLUSION**

For the reasons set forth below, Plaintiff's motion for summary judgment (ECF No. 9) is **DENIED**, the Commissioner of Social Security's motion for summary judgment (ECF No. 10) is **GRANTED**, and the decision of the administrative law judge (ALJ) is **AFFIRMED**.

**II.**    **ANALYSIS**

    **A.**    **Introduction and Procedural History**

On February 22, 2022, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging she became disabled on February 18, 2022. (ECF No. 6-1, PageID.203). The Commissioner initially denied

1

the applications on November 21, 2022, and on reconsideration on July 10, 2023. (*Id.*).  Plaintiff then requested a hearing before an ALJ, which was held on November 2, 2023.  (*Id.*).  The ALJ issued a written decision on January 4, 2024, finding Plaintiff was not disabled.  (*Id.* at PageID.203–21).  Following the ALJ's decision, Plaintiff requested review from the Appeals Council, which remanded to the ALJ for a new hearing to further explain the supportability and consistency factors for prior medical opinions.  (*Id.* at PageID.227–31).

The ALJ conducted a new hearing on May 8, 2025.  (*Id.* at PageID.30, 91–131).  On July 21, 2025, the ALJ again determined Plaintiff was not disabled.  (*Id.* at PageID.27–44).  On August 29, the Appeals Council denied her request for review.  (*Id.* at PageID.21–23).

Following the Appeals Council's denial of review, Plaintiff sought judicial review on October 31, 2025.  (ECF No. 1).  The parties consented to the Undersigned "conducting any or all proceedings in this case, including entry of a final judgment and all post-judgment matters."  (ECF No. 8).  The parties have since filed cross-motions for summary judgment for which briefing is complete.  (ECF Nos. 9, 10, 11).

### B.    Standard of Review

District  courts  have  jurisdiction  to  review  the  Commissioner's  final administrative decisions pursuant to 42 U.S.C. § 405(g).  The review is restricted

solely to determining whether "the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (citation modified).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citation modified).  "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation modified).

A district court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  Courts will "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id.* (citation modified).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v.*

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, [the ALJ] consider[s] [the claimant's] work activity, if any.  If [the claimant is] doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.
>
> (ii) At the second step, [the ALJ] consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, [the ALJ] will find that [the claimant is] not disabled.
>
> (iii) At the third step, [the ALJ] also consider[s] the medical severity of [the claimant's] impairment(s).  If [the claimant has] an impairment(s) that meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement, [the ALJ] will find that [the claimant is] disabled.
>
> (iv) At the fourth step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . past relevant work. If [the claimant] can still do . . . past relevant work, [the ALJ] will find that [the claimant is] not disabled.
>
> (v) At the fifth and last step, [the ALJ] consider[s] [his or her] assessment of [the claimant's] residual functional capacity and . . . age, education, and work experience to see if [the claimant] can make an adjustment to other work.  If [the claimant] can make an adjustment to

4

other work, [the ALJ] will find that [the claimant is] not disabled.  If [the claimant] cannot make an adjustment to other work, [the ALJ] will find that [the claimant is] disabled.

20 C.F.R. § 404.1520(4); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  The claimant must provide evidence establishing his or her residual functional capacity (RFC), which "is the most [the claimant] can still do despite [his or her] limitations," and is assessed using "all the relevant evidence in [the] case record."   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 214 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.    ALJ Findings**

Following the five-step sequential analysis, the ALJ determined Plaintiff was not disabled.  (ECF No. 6-1, PageID.44).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 18, 2022, the alleged onset date.  (*Id.* at PageID.33).  At step two, the ALJ found the following severe impairments: cerebrovascular accident (CVA), hypertension, peripheral neuropathy, obesity, depression, and mild vascular neurocognitive disorder.  (*Id.*).

At step three, the ALJ found none of the impairments, either independently or in combination, met or medically equaled in severity or duration the criteria of any listing.  (*Id.* at PageID.33–36).

Next, the ALJ found Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant must be allowed to use a cane (in dominant hand) for ambulating distances of 5 minutes or more.  The claimant can never climb ladders or crawl; she can occasionally climb ramps and stairs; occasionally stoop, kneel, and crouch; occasionally reach overhead with the non-dominant left upper extremity; frequently reach in all other directions; and frequently, but not constantly, perform handling and fingering using the non-dominant left upper extremity. There can be no concentrated exposure to vibration, no work at unprotected heights, and no work with unguarded moving mechanical parts or on slippery, uneven, or obstructed terrain.  She is limited to simple work-related decisions without a specific production rate pace, such as an assembly line or hourly production quotas.  She is limited to understanding, remembering, and carrying out simple instructions in work with only occasional changes in a routine work setting and only occasional interaction with the public, coworkers, and supervisors.

(*Id.* at PageID.36).

At step four, the ALJ found Plaintiff was unable to perform any past relevant

work. (*Id.* at PageID.42). However, at step five, the ALJ found other jobs in the national economy that Plaintiff could perform. (*Id.* at PageID.42–43). Specifically, the ALJ found Plaintiff could perform the requirements of an office support clerk (380,000 jobs in the national economy), a packer (60,000), and a bench assembler (52,000). (*Id.* at PageID.43). The ALJ thus concluded Plaintiff was "not disabled." (*Id.* at PageID.43–44).

### E.      Administrative Record

Plaintiff raises three issues on appeal. First, Plaintiff argues the ALJ's decision that her impairments do not meet Listing 11.04 is unsupported by substantial evidence. Second, Plaintiff argues the ALJ failed to properly consider her subjective allegations of symptoms. Third, Plaintiff argues the ALJ's RFC is unsupported by substantial evidence. While the Court has reviewed the entire record, it will only summarize the evidence relevant to Plaintiff's issues on appeal.

Plaintiff went to the hospital on February 17, 2022, with complaints of pain and tingling in her left arm and leg, a headache, and strange speech. (ECF No. 6-1, PageID.723–24). An MRI showed "a small focus of acute/subacute ischemic injury within the deep white matter of the mid to posterior right frontal lobe." (*Id.* at PageID.1859). In other words, imaging revealed that Plaintiff had suffered an acute ischemic stroke. (*Id.* at PageID.748). On physical examination, she showed impaired balance and coordination, gait abnormalities, and left leg and foot

weakness (although her left leg was still noted to be 5/5 for strength at the time). (*Id.* at PageID.716, 727, 748–51). Per Plaintiff's request, her doctor prescribed a walker for mobility the next month. (*Id.* at PageID.715–17).

At a July 2022 adult ambulatory visit, Plaintiff's gait was observed to be abnormal. (*Id.* at PageID.1825). In September, Plaintiff reported chronic tingling in her left leg, but her gait was observed to be intact. (*Id.* at PageID.1814–15, 2107, 2539). She was advised to continue taking prescribed medications for her stroke. (*Id.* at PageID.1816–17). Her gait was listed as abnormal several other times throughout the relevant period, which was sometimes accompanied with motor weakness. (*E.g.*, *id.* at PageID.1728, 1890, 2011, 2029, 2037, 2048, 2056, 2078, 2121, 2503, 2512, 2633, 2643, 2654).

A neurologist saw Plaintiff in September 2022. He noted on her physical exam that Plaintiff had "quite a bit of element of embellishment with the way she is walking without a cane or walker and the way she is bending her knees and walking in a very awkward way to prove the point. She probably does have pain but there [are] a lot of behavioral elements." (*Id.* at PageID.2092). The neurologist concluded that Plaintiff likely experiences some musculoskeletal pain along with some fixation on her deficits, but he did not have any further recommendations from a neurological standpoint. (*Id.*).

Plaintiff had a consultative physical examination in October 2022. She came

8

into the office with a walker, had difficulty walking more than a few steps without it, and had difficulty getting onto the exam table. (*Id.* at PageID.1870). The examiner observed left-sided weakness of the motor system and decreased touch-pain sensation. (*Id.*). Nevertheless, the examiner was unable to obtain results for several tests, including left hand grip and knee range of motion because Plaintiff refused to perform them. (*Id.*). The examiner was unable to reach a conclusion to explain the pain in Plaintiff's left side but noted "[h]er left arm weakness is partly due to non-cooperation and not holding a good grip and partly due to her stroke." (*Id.* at PageID.1871).

Plaintiff's treating physician filled out a medical source statement in January 2023, opining she had numerous severe work-related impairments, including being unable to use her left arm at all. (*Id.* at PageID.1965–68). A March exam showed Plaintiff had 5/5 strength on her right extremities and 3/5 strength on the left. (*Id.* at PageID.1972). In May, Plaintiff reported tingling in her left side, and testing showed abnormal sensation in her left foot. (*Id.* at PageID.2037).

In August 2023, Plaintiff went to the ER for right-sided facial numbness. (*Id.* at PageID.2157, 2548). She was assessed to have an "NIH score[1] of 1 based on facial sensory changes" compared to a 4 from her prior stroke. (*Id.* at PageID.2160,

---

[1] An NIH score of 0 to 5 corresponds to a minor stroke. NIH stroke scale, Cleveland Clinic, https://my.clevelandclinic.org/health/diagnostics/nih-stroke-scale (last updated Oct. 31, 2025).

2169, 2184).  A CT showed no evidence of acute stroke.  (*Id.* at PageID.2161, 2186).

An MRI was also negative.  (*Id.* at PageID.2188).  Her strength in the right side was

5/5 and her left side was 4/5.  (*Id.* at PageID.2184, 2574, 3175).  Plaintiff was

evaluated for physical therapy and it was opined that she would benefit from it to

address deficits in her left extremities; however, Plaintiff declined the recommended

rehab upon discharge because of her prior lack of progress with physical therapy.

(*Id.* at PageID.2188, 2197–98).

In January 2024, Plaintiff's strength in her left lower extremity decreased to

2/5.  (*Id.* at PageID.2650).  An annual physical exam in June 2024 showed her motor

strength in her left leg increased back to 4/5 with sensation impaired but otherwise

normal.   (*Id.* at PageID.2632).   The doctor "[a]gree[d] [with neurology] that

[Plaintiff's] perceived symptoms are slightly inflated."   (*Id.* at PageID.2633).

Plaintiff was advised to complete at least 30 minutes of moderate intensity physical

activity most days.  (*Id.*).

Plaintiff went to the hospital again in July 2024, stating that the numbness and

weakness in her left side had worsened the night before.  (*Id.* at PageID.2729).  She

had 5/5 strength in her right side and left arm but 2/5 in her left leg with significant

diminishing of sensation in the left leg.  (*Id.* at PageID.2732).  A CT appeared to

show new ischemic infarcts, but there was ultimately no significant change from

prior imaging.  (*Id.* at PageID.2732, 2759–60, 2762–63).  An MRI of the head

showed no evidence of acute infarction.  (*Id.* at PageID.2763).  Plaintiff was recommended for rehab which she again declined as she felt she had adequate support at home.  (*Id.*).  The next day, Plaintiff's strength in her left leg was back to 4/5.  (*Id.* at PageID.2813).

Her strength continued to be 4/5 in November when she presented to the hospital again for a minor stroke (NIH score of 2).  (*Id.* at PageID.3714–15, 3749, 3761, 3830, 3870, 3923, 3956).  A new MRI showed no acute infarct.  (*Id.* at PageID.3736).  Plaintiff again declined recommended inpatient rehab.  (*Id.* at PageID.3741).  She also refused a medication used to treat acute ischemic strokes by breaking down blood clots.  (*Id.* at PageID.3842).  Providers reasoned that the minor strokes following her 2022 stroke were likely due to a heart condition rather than any issues with her brain.  (*Id.* at PageID.3909).  Further facts will be discussed below as necessary.

**F.      Governing Law**

The ALJ must "consider all evidence" in the record when making a disability decision.  42 U.S.C. § 423(d)(5)(B).  The regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources.  An acceptable medical source means a medical source who is a:

(1) Licensed physician (medical or osteopathic doctor);

(2) Licensed psychologist, which includes:

    (i)     A licensed or certified psychologist at the independent practice level; or

    (ii)    A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3) Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4) Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5) Qualified speech-language pathologist for speech or language impairments only. For this source, *qualified* means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language Pathology from the American Speech-Language-Hearing Association;

(6) Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only . . . ;

(7) Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice . . . ; or

(8) Licensed Physician Assistant for impairments within his or her licensed scope of practice . . . .

20 C.F.R. § 404.1502(a) (2021).  A medical source is

> an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law.

*Id.* § 404.1502(d).  In contrast, a nonmedical source is "a source of evidence who is not a medical source."  *Id.* § 404.1502(e).  "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy."  *Id.*

The Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  *Id.* § 404.1520c(a).  "The most important factors [the SSA] consider[s] when evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)."  *Id.*  The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case.  *Id.* § 404.1520c(c).

The first factor is "supportability."  For this factor, "[t]he more relevant the

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1).

The SSA will also consider the "consistency" of the opinion. In essence, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

In addition, the SSA will consider the source's "[r]elationship with the claimant." *Id*. § 404.1520c(c)(3). This factor includes analysis of:

(i)     Length of the treatment relationship. The length of time a medical source has treated [the claimant] may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(ii)    Frequency of examinations. The frequency of [the claimant's] visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s);

(iii)   Purpose of the treatment relationship. The purpose for treatment [the claimant] received from the medical source may help demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(iv)    Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help

14

demonstrate the level of knowledge the medical source has of [the claimant's] impairment(s);

(v)     Examining relationship.  A medical source may have a better understanding of [the claimant's] impairment(s) if he or she examines [the claimant] than if the medical source only reviews evidence in [the claimant's] folder.

*Id.*

The fourth factor of the SSA's analysis is "specialization."  In making this determination, the SSA will consider

[t]he medical opinion or prior administrative medical finding of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion or prior administrative medical finding of a medical source who is not a specialist in the relevant area of specialty.

*Id.* § 404.1520c(c)(4).

Finally, the SSA will consider "other factors."  These may include any other information that "tend[s] to support or contradict a medical opinion or prior administrative medical finding."  *Id.* § 404.1520c(c)(5).  Other factors include "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." *Id.*  Further, when the SSA considers "a medical source's familiarity with the other evidence in a claim, [it] will also consider whether new evidence [it] receive[s] after the medical evidence source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative

medical finding more or less persuasive." *Id.*

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements." The ALJ will consider "source-level articulation." Pursuant to this requirement,

> [b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate.

*Id.* § 404.1520c(b)(1). The regulation reiterates that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually." *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors [the SSA] consider[s] when [it] determine[s] how persuasive [it] find[s] a medical source's medical opinions or prior administrative medical findings to be." *Id.* § 404.1520c(b)(2). As such, the SSA

> will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative

16

> medical findings in [the claimant's] determination or decision. [The SSA] may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when [it] articulate[s] how [it] consider[s] medical opinions and prior administrative medical findings in [the claimant's] case record.

*Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported," and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors . . . for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* § 404.1520c(b)(3). The regulations clarify that the SSA is "not required to articulate how [it] considered evidence from nonmedical sources using the requirements of paragraphs (a)–(c) of this section." *Id.* § 404.1520c(d).

In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c." *Id.* § 404.1520b(c). The regulations categorize evidence that is inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities"; "[d]isability examiner findings," meaning "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate

17

determination about whether [the claimant is] disabled"; and "[s]tatements on issues

reserved to the Commissioner[,]" including

(i)     Statements that [the claimant is] or [is] not disabled, blind, able to work, or able to perform regular or continuing work;

(ii)    Statements about whether or not [the claimant has] a severe impairment(s);

(iii)   Statements about whether or not [the claimant's] impairment(s) meet the duration requirement . . . ;

(iv)    Statements about whether or not [the claimant's] impairment(s) meets or medically equals any listing in the Listing of Impairments . . . ;

(v)     Statements about what [the claimant's] residual functional capacity is using [the SSA's] programmatic terms about the functional exertional levels . . . instead of descriptions about [the claimant's] functional abilities and limitations . . . ;

(vi)    Statements about whether or not [the claimant's] residual functional capacity prevents [the claimant] from doing past relevant work . . . ;

(vii)   Statements that [the claimant] [does] or [does] not meet the requirements of a medical-vocational rule . . . ; and

(viii)  Statements about whether or not [the claimant's] disability continues or ends when [the SSA] conduct[s] a continuing disability review.

*Id.* § 404.1520b(c)(3).

The regulations also provide that

[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits is based on its rules, it is not

18

binding on [the SSA] and is not [its] decision about whether [the claimant is] disabled or blind under [SSA] rules.

*Id.* § 404.1504.   Therefore, the SSA "will not provide any analysis in [its] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." *Id.*  The SSA will, however, "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [it] receive[s] as evidence in [a] claim . . . ." *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f).  Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms)." *Id.* § 404.1502(g).  Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.*  Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques," which "include chemical tests (such as blood tests),

19

electrophysiological studies (such as electrocardiograms and electroencephalograms), medical imaging (such as X-rays), and psychological tests." *Id.* § 404.1502(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain:

> In determining whether [the claimant is] disabled, [the SSA will] consider all [the claimant's] symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The SSA] will consider all [the claimant's] statements about [his or her] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [his or her] ability to work.

*Id.* § 404.1529(a). But the SSA clarified that

> statements about [the claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

*Id.* Further, "[i]n evaluating the intensity and persistence of [the claimant's] symptoms, including pain, [the SSA] will consider all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements about how [the claimant's] symptoms affect [him or her]." *Id.* The

20

SSA will "then determine the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how [the claimant's] symptoms affect [his or her] ability to work." *Id.*

Finally, the SSA noted that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, [it] will carefully consider any other information [the claimant] may submit about [his or her] symptoms." *Id.* § 404.1529(c)(3). This other information may include "[t]he information that [the claimant's] medical sources or nonmedical sources provide about [the claimant's] pain or other symptoms," such as "what may precipitate or aggravate [the claimant's] symptoms, what medications, treatments or other methods [the claimant uses] to alleviate them, and how the symptoms may affect [the claimant's] pattern of daily living," which "is also an important indicator of the intensity and persistence of [the claimant's] symptoms." *Id.*

> Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that [the claimant's] medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account . . . . [The SSA] will consider all of the evidence presented, including information about [the claimant's] prior work record, [the claimant's] statements about [his or her] symptoms, evidence submitted by [the claimant's] medical sources, and observations by [the SSA's] employees and other persons.

*Id.*  Factors relevant to a claimant's symptoms, such as pain, include:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain or other symptoms;

(vi)    Any measures . . . used to relieve . . . pain or other symptoms.

*Id.*

The new regulations also impose a duty on the claimant: "[i]n order to get benefits, [the claimant] must follow treatment prescribed by [his or her] medical source(s) if this treatment is expected to restore [his or her] ability to work."  *Id.* § 404.1530(a).  Stated differently, "[i]f [the claimant does] not follow the prescribed treatment without a good reason, [the SSA] will not find [the claimant] disabled or, if [the claimant is] already receiving benefits, [the SSA] will stop paying . . . benefits."  *Id.* § 404.1530(b).  Acceptable (or "good") reasons for failure to follow prescribed treatment include:

(1)     The specific medical treatment is contrary to the established teaching and tenets of [the claimant's] religion;

(2)     The prescribed treatment would be cataract surgery for one eye,

22

when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)     Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)     The treatment because of its magnitude (e.g., open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for [the claimant]; or

(5)     The treatment involves amputation of an extremity, or a major part of an extremity.

*Id.* § 404.1530(c).

### G.     Argument and Analysis

Plaintiff first argues the ALJ's decision that her impairments do not meet Listing 11.04 is unsupported by substantial evidence.  Second, Plaintiff argues the ALJ failed to properly consider her subjective allegations of symptoms.  Third, Plaintiff argues the ALJ's RFC is unsupported by substantial evidence.

#### 1.     Listing 11.04(B)

Plaintiff first argues that the ALJ's step three determination that her impairments did not meet or equal Listing 11.04(B) was not supported by substantial evidence.  (ECF No. 9, PageID.4043).  Specifically, Plaintiff cites evidence showing that after her 2022 stroke, medical records fairly consistently documented an abnormal gait, impaired balance, left foot drop, decreased strength, sensory deficits, and the ongoing need for an assistive device.  (*Id.* at PageID.4044 (citing ECF No.

23

6-1, PageID.716–17, 1728–30, 1868–80)).

The plaintiff has the burden to show that her impairment meets or medically equals a listed impairment. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 413 (6th Cir. 2011).

> The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). In other words, a claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits.

*Id.* at 414. Even where the ALJ's step three analysis is "quite cursory," a remand is unnecessary if the ALJ's decision read as a whole demonstrates sufficient consideration of the relevant evidence to allow for meaningful judicial review. *Day v. Comm'r of Soc. Sec.*, No. 16-cv-12913, 2017 WL 4960178, at *3 (E.D. Mich. Sept. 28, 2017) (citing *Gower v. Comm'r of Soc. Sec.*, No. 13-cv-14511, 2015 WL 163830, at *9 (E.D. Mich. Jan. 13, 2015)).

Listing 11.04(B) relates to vascular insult to the brain, which includes stroke. The listing is satisfied where there is "[d]isorganization of motor function in two extremities . . . resulting in an extreme limitation . . . in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, persisting for at least 3 consecutive months after the insult." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.04(B). An extreme limitation, as relevant here, means

24

the inability to stand up from a seated position, [or] maintain balance in a standing position and while walking, . . . .  The assessment of motor function depends on the degree of interference with standing up; balancing while standing or walking; . . . .

a.  Inability to stand up from a seated position means that once seated you are unable to stand and maintain an upright position without the assistance of another person or the use of an assistive device, such as a walker, two crutches, or two canes.

b.  Inability to maintain balance in a standing position means that you are unable to maintain an upright position while standing or walking without the assistance of another person or an assistive device, such as a walker, two crutches, or two canes.

*Id.* § 11.00(D)(2).

There are several issues with Plaintiff's argument.  First, the ALJ specifically found that, "[d]espite being prescribed a walker by her primary care physician, the record does not establish that use of a walker is medically necessary, as many records show that she is able to maintain a stable gait with the use of a cane."  (ECF No. 6-1, PageID.38).  Plaintiff does not challenge this finding on appeal, thus waiving this issue.  *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006) ("[W]e limit our consideration to the particular points that Hollon appears to raise in her brief on appeal.").  Therefore, Plaintiff has not met her burden to show an extreme limitation, which requires a walker, two crutches, or *two* canes.  The record only shows Plaintiff needs one cane in order to stand, balance, or ambulate.  While it may be true that the medical evidence fairly consistently documented an abnormal gait, impaired balance, left foot drop, decreased strength, sensory deficits,

and the ongoing need for an assistive device, this evidence does not show that her impairment meets or medically equals Listing 11.04(B).

In addition, Plaintiff relies on a medical source statement and her consultative examination to support her argument. The ALJ found these opinions only partially persuasive. The ALJ explained that Plaintiff's medical source statement was not persuasive insofar as it opined on the necessity of a cane for standing, among other limitations. (ECF No. 6-1, PageID.39). As for the consultative examination, the ALJ found Plaintiff's purported inability to stand was not consistent with the clinical evidence in the record and discussed that the findings were compromised by Plaintiff's notedly poor effort and cooperation with the testing. (*Id.* at PageID.40). Again, Plaintiff fails to challenge these findings and has waived the issues on appeal.

Because this evidence was found to be not persuasive and Plaintiff does not challenge these findings, Plaintiff cannot now use it to establish that substantial evidence does not support the ALJ's findings. Moreover, a plaintiff does not undermine the substantial evidence an ALJ relied on in his findings just by pointing to other evidence in the record that could support an opposite finding. *E.g.*, *Davis v. Comm. of Soc. Sec.*, No. 18-cv-13576, 2019 WL 6208732, at *10 (E.D. Mich. Oct. 31, 2019). Instead, a plaintiff must show that the ALJ's decision is not supported by substantial evidence, and Plaintiff has failed to do so with regard to this argument.

## 2.    Subjective Testimony

26

Plaintiff next argues the ALJ's subjective symptom evaluation was legally deficient because he cherry-picked sporadic normal exam findings and disregarded extensive evidence documenting persistent and severe post-stroke limitations, violating SSR 16-3p.  (ECF No. 9, PageID.4047).  Plaintiff cites to record evidence showing persistent left-sided weakness, impaired balance, difficulty ambulating, fatigue, headaches, cognitive impairment, and memory loss.  (*Id.*).

According to SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements with other record evidence, considering his or her testimony about pain or other symptoms with the rest of the relevant evidence in the record and other factors.  SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  This analysis and the conclusions drawn from it—formerly termed a credibility determination—can be disturbed only for a "compelling reason."  *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The regulations establish a two-step process for evaluating subjective symptoms, including pain.   20 C.F.R.  § 404.1529(a);  SSR 16-3p,  2016 WL 1119029, at *2.  First, the ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists.  The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain.

27

*See* 20 C.F.R. § 404.1529; SSR 16-3p, 2016 WL 1119029, at \*2; *Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994).  The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms.  SSR 16-3p, 2016 WL 1119029, at \*6.

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (internal quotation omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled."  20 C.F.R. § 404.1529(a).  The absence of objective, confirming evidence obligates the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . take[n] to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain . . . ;
(vi)    Any measures . . . used to relieve . . . pain; and
(vii)   Other factors . . . .

20 C.F.R. § 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039–40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at \*7.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility" as long as the assessment is

28

supported by substantial evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Saunders v. Kijakzi*, No. 20-cv-12210, 2022 WL 885838, at *3 (E.D. Mich. Mar. 25, 2022) ("'It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant'" (quoting *Rogers.*, 486 F.3d at 247)).

Claims of cherry-picking record evidence rarely succeed: "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (crediting argument of cherry picking requires court to re-weigh record evidence). And the Court may not reweigh evidence on appeal. *Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. 2022).

Here, Plaintiff's argument amounts to a request to re-weigh the evidence. Indeed, the ALJ discussed the evidence Plaintiff now points to but ultimately found Plaintiff could perform sedentary work with additional restrictions:

> The evidence of record supports a finding that the claimant's neurological impairments, as exacerbated by the unlisted impairments, impose limitations consistent with the ability to perform a reduced range of sedentary work, but this evidence does not warrant greater limitations than those accommodated in the above determination. Since experiencing an acute stroke in February of 2022, the claimant repeatedly showed signs of obese BMIs, elevated blood pressure levels, neurological deficits in the upper and lower extremities (including numbness and weakness in the left extremities (especially in the left lower extremity, which causes some foot dragging), reduced

coordination in all extremities (especially in the lower extremities), and other unspecific indicia of neuropathy that were attributed to the stroke), and abnormal gait with periodic reliance on a cane for ambulation.  However, the records (especially the records from the neurologist) show that the claimant's gait was often intact, that she customarily performed orthopedic maneuvers without marked difficulties, that the claimant's left upper extremity often appeared normal or only with mild neurological deficits, and that she did not show focal deficits related to the claimant's complaints of headaches. The claimant also complained of extreme pain in the left extremities, but contemporaneous records show indicia of embellishment and a lack of record support to establish a pathology for those symptoms.

(ECF No. 6-1, PageID.37 (internal record citations omitted)).

These findings are supported by substantial evidence.  Plaintiff again relies on the medical source statement without challenging the ALJ's findings on its persuasiveness.  Additionally, Plaintiff cites evidence already discussed and weighed by the ALJ.  However, the Court cannot re-weigh the evidence.  For example, Plaintiff cites to recent evidence of deterioration, specifically January 2024 testing that showed left lower extremity strength of only 2/5.  (ECF No. 9, PageID.4049).  But Plaintiff ignores other evidence around that time showing strength of 4/5 on the left leg.  (*E.g.*, ECF No. 6-2, PageID.2632, 2813).  Ultimately, the ALJ considered all this evidence and found Plaintiff could perform the work described in the RFC.  Plaintiff has failed to show the findings were unsupported by substantial evidence, instead merely pointing to evidence from which a different determination *could* have been made.  Nor does Plaintiff show any greater restrictions she required with her limitations.

The Court's review of the ALJ's detailed decision, the medical record, and Plaintiff's arguments show that the ALJ properly considered the appropriate factors in weighing Plaintiff's statements of subjective symptoms.  As such, Plaintiff has not shown the ALJ erred on this issue nor that the ALJ's decision is not supported by substantial evidence.

### 3.    Substantial Evidence

Plaintiff next argues that the RFC is not supported by substantial evidence. This argument substantially overlaps with her other arguments, which have already been discussed and rejected.  (*See* ECF No. 9, PageID.4050 ("This RFC is incompatible with the medical evidence and rests on the same flawed symptom analysis discussed above.")).  Many of Plaintiff's arguments cite medical evidence that has already been weighed and considered by the ALJ.[2]  In other words, this is another improper attempt to get the Court to reweigh the evidence.  But even if this Court were to come to a different conclusion, there is substantial evidence that supports the ALJ's RFC, as discussed above.  *See, e.g.*, *White v. Colvin*, No. 14-cv-12870, 2015 WL 5210243, at *12 (E.D. Mich. Sept. 3, 2015) ("Where, as here, the ALJ provided a narrative discussion of a claimant's symptoms, their effect on the

---

[2] Moreover, one of Plaintiff's citations is to more than 700 pages of the 4,000-page record. (*See* ECF No. 9, PageID.4051 (citing ECF No. 6-1, PageID.712–1205, 1559–1793, 1868–80)).  "[T]he Court will not search the record for potential arguments or evidence beneficial to Plaintiff." *Marko v. Comm'r of Soc. Sec.*, No. 16-cv-12204, 2017 WL 3116246, at *3 (E.D. Mich. July 21, 2017) (citation omitted).

claimant's work, and how he reached those conclusions, the ALJ's narrative substantially complied with the requirements of SSR 96-8p."); *Deweese v. Comm'r of Soc. Sec.*, No. 17-14081, 2018 WL 8244844, at *7 (E.D. Mich. Oct. 9, 2018), *report and recommendation adopted*, 2019 WL 1324238 (E.D. Mich. Mar. 25, 2019); *Taylor v. Comm'r of Soc. Sec.*, No. 25-cv-10068, 2026 WL 867499, at *3 (E.D. Mich. Mar. 30, 2026).

Plaintiff "bears the burden of showing that she requires a more restrictive RFC." *Scott v. Saul*, No. 19-cv-13200, 2021 WL 1234598, at *6 (E.D. Mich. Feb. 16, 2021) (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)), *report and recommendation adopted*, 2021 WL 1212666 (E.D. Mich. Mar. 31, 2021). Plaintiff has not shown the RFC is unsupported by substantial evidence, or that she required further restrictions, only that there may be substantial evidence that could go either way. Because it is the ALJ's job—not this Court's—to weigh the evidence, Plaintiff's arguments to the contrary fail. In sum, the Court concludes that the ALJ's decision is supported by substantial evidence and that Plaintiff has not established any errors warranting remand

## III.   ORDER

For these reasons, Plaintiff's motion (ECF No. 9) is **DENIED**, the Commissioner's motion (ECF No. 10) is **GRANTED**, and the ALJ's decision is **AFFIRMED**.

32

**IT IS SO ORDERED.**

Date: April 13, 2026

S/PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge